UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-14384-CIV-MARRA

JENNIFER WILLIAMS,

Plaintiff,

vs.

PEDIATRIC ALTERNATIVE TREATMENT
CARE, HOUSING AND EVALUATION
SERVICES, INC. a Florida not for profit
corporation,

Defendant.
_____/

## **OPINION AND ORDER**

This cause is before the Court upon Defendant's Motion for Summary Judgment (DE 27). The Motion is fully briefed and ripe for review. The Court has carefully considered the Motion and is otherwise fully advised in the premises.

I. Background

The facts, as culled from affidavits, exhibits, depositions, answers, answers to interrogatories and reasonably inferred therefrom in the light most favorable to the non-moving party, for the purpose of this motion, are as follows:

In July 2010, Plaintiff Jennifer Williams ("Plaintiff"), who is African-American, was hired by Defendant Pediatric Alternative Treatment Care ("Defendant") as a certified nursing assistant in Fort Pierce, Florida. (Pl. Statement of Facts ¶ 1, DE 35.) In 2011, Gail Steward was promoted to director of nursing and administrator of Defendant's Fort Pierce facility and became Plaintiff's immediate supervisor. (Pl. Statement of Facts ¶ 2.)

According to Plaintiff, she and Ms. Steward were "always at it" and Ms. Steward was "disrespectful," "rude" and "nasty." (Pl. Dep. 44, 48, 69, DE 29-1.) Ms. Steward would get more upset with the workers who worked with the children as opposed to the office staff, and the child care workers were predominately African-American. (Pl. Dep. 48-49.) Once Ms. Steward was promoted to the directorship, Plaintiff felt her own job would be in jeopardy. (Pl. Dep. 52-53.)

In January 2014, Plaintiff received a five-day suspension and 90 day probation period, for among other reasons, attendance. (Pl. Dep. 82.) The form was drafted by Ms. Steward nearly a year after the alleged disciplinary violation occurred. (Ex. 3, DE 29-1.) Next, according to Plaintiff, when she returned from maternity leave in October of 2014, her schedule changed. (Pl. Dep. 29; Steward Aff. ¶ 5.) During her deposition, Plaintiff testified, "That's what this whole allegation about because she changed my schedule." (Pl. Dep. 31.) Plaintiff testified no one else's schedule was changed.[1] (Pl. Dep. 34.)

On November 13, 2014, Plaintiff received another written warning regarding her attendance and hours. (Pl. Dep. 84-85; Ex. 4, DE 29-1.) Plaintiff claims she was not able to meet her hours, however, due to the schedule changes and because she was asked to leave early when there were no children present at the facility. (Pl. Dep. 88-90.) On November 25, 2014, Plaintiff received another disciplinary/counseling writeup concerning her attendance. (Pl. Dep. 86; Ex. 5, DE 29-1.) Plaintiff testified that she was not able to make her hours because she was sent home when there were no more children left at the facility. (Pl. Dep. 90.)

---

[1] Defendant states that Plaintiff only identifies other black employees whose schedules were not changed. (Def. Statement of Facts ¶ 10.) However, the record citations do not provide evidence of this asserted fact.

2

Based on these issues with Plaintiff's hours and attendance, Defendant's chief executive officer and the human resources director decided a final warning should be given to Plaintiff. They directed Mary Ellmore, an employee in Florida City, to prepare the final warning document. The final warning document did not contain Ms. Ellmore's signature. Instead, it had the signature of Ms. Steward. (Steward Decl. ¶ 7; Ex. 6, DE 29-2.) The final warning provided that Plaintiff must work Monday through Wednesday one week and Wednesday through Friday the alternate week. The final warning provided that if Plaintiff could not follow this schedule she would be terminated immediately. (Pl. Statement of Fact ¶ 15.)

Plaintiff received the final warning regarding her hours and attendance on December 18, 2014.[2][3] (Pl. Statement of Fact ¶ 17.) The day after being given the final warning, on December 19, 2014, Plaintiff told Ms. Steward that she could not work her schedule because of her baby's doctor appointments. (Pl. Dep. 70-72.)[4][5] At that meeting, which included the attendance of a

---

[2] According to Defendant, management in Florida City told Ms. Steward to meet with Plaintiff to present the final warning. (Steward Decl. ¶ 8) Plaintiff claims this is hearsay. Given that it does not change the outcome, the Court will not decide this issue at this time.

[3] Plaintiff disputes the accuracy of the some of the numbers on the final warning, including the hours worked, some of the "left early" and "tardy" numbers. (Pl. Dep. 96.)

[4] The testimony is unclear as to whether Plaintiff also said she could not work her schedule because of the Thanksgiving and Christmas holidays, or if she said it would be too difficult to re-schedule the doctor appointments around the holidays. (Pl. Dep. 70-72.)

[5] Defendant claims that Ms. Steward then told management at Florida City about this conversation and they instructed her to terminate Plaintiff for failure to follow through with the final warning plan. (Steward Decl. ¶ 10.) Again, Plaintiff claims this evidence is hearsay and the Court will reserve ruling on this issue, as it does not affect the outcome.

3

witness (Cary Hazellief),[6] Ms. Steward notified Plaintiff that she was terminated for failure to comply with the final warning. (Steward Decl. ¶ 11.)

In contrast, Plaintiff claims that Ms. Steward notified her of her termination over the telephone and called Plaintiff a "stupid nigger." (Pl. Dep. 64-69.) Ms. Steward denies the termination was over the phone or that she used that slur. (Steward Decl. ¶ 12.) Plaintiff does not know who decided to terminate her. (Pl. Dep. 74.) No other employee was terminated for attendance issues during the time period of 2010 through 2014. (Def. Resp. to Pl. Second Set of Interrog. No. 1, DE 34-4.)

Defendant's headquarters is in Florida City and no one in Fort Pierce, including Ms. Steward, has the authority to terminate any employee without direction from headquarters. (Steward Decl. ¶ 3.) According to Defendant, Ms. Steward did not make the decision to put Plaintiff on a final warning, or prepare the final warning, or make the decision to terminate Williams. (Steward Decl. ¶ 13.)

Defendant moves for summary judgment on the following ground: (1) Plaintiff has no direct evidence of discrimination by any decision maker: (2) neither the final warning nor the change in schedule constitutes an adverse employment action: (3) Plaintiff fails to identify a comparator and (4) Plaintiff cannot rebut Defendant's legitimate, non-discriminatory reason for her termination; namely, Plaintiff's failure to work the required schedule.

---

[6] When Ms. Hazellief was asked if she worked on December 19, 2014, she stated that she did not remember, but she did recall a conversation between Plaintiff and Ms. Steward. She does not remember what was said, but she remembered Plaintiff and Ms. Steward could not reach an agreement and Plaintiff left her employment. (Cary Hazellief Dep. 17-18, DE 34-3.)

II.  Summary Judgment Standard

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The Court should not grant summary judgment unless it is clear that a trial is unnecessary, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp., 477 U.S. at 323.  To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case.  Id. at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) and (B).

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim.  Anderson, 477

5

U.S. at 257. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." Anderson, 477 U.S. 242, 249-50.

III. Discussion[7]

A plaintiff may establish a claim of illegal disparate treatment either through direct or circumstantial evidence. Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1085 (11th Cir. 2004). "Disparate treatment claims require proof of discriminatory intent either through direct or circumstantial evidence." E.E.O.C. v. Joe's Stone Crab, Inc., 220 F.3d 1263, 1286 (11th Cir. 2000).

"[D]irect evidence of discrimination is evidence that reflects a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." Van Voorhis v. Hillsborough County Bd. of County Commissioners, 512 F.3d 1296, 1300 (11th Cir. 2008) (citing Wilson, 376 F.3d at 1086). Put another way, direct evidence is "evidence, which if believed, proves existence of fact in issue without inference or presumption." Merritt v. Dillard Paper Co., 120 F.3d 1181, 1189 (11th Cir. 1997) (internal quotation marks omitted). "Only the most blatant remarks, whose intent could be nothing other than to

---

[7] Title VII, Section 1981 and the Florida Civil Rights Act are analyzed under the same framework. Jones v. United Space Alliance, L.L.C., 494 F.3d 1306, 1310 (11th Cir. 2007); Standard v.. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998).

6

discriminate on the basis of age, constitute direct evidence of discrimination."[8] Van Voorhis, 512 F.3d at 1300 (quoting Carter v. City of Miami, 870 F.2d 578, 581 (11th Cir. 1989) (internal bracket and ellipses omitted)). "When statements displaying discriminatory animus are directed at an employee and made contemporaneously with an adverse employment action towards that employee, those statements constitute direct evidence of discrimination." LaMothe v. Bal Harbour 101 Condo. Assoc., Inc., 316 F. App'x 844, 846 (11th Cir. 2008); see Smallwood v. T&A Farms, No. 5:14-CV-86, 2017 WL 150502, at * 8 (S.D. Ga. Jan. 13, 2017) (management calling employee "uppity nigger" and then terminating employment constitutes direct evidence). Moreover, to qualify as direct evidence of discrimination, a statement of discriminatory intent must be made by a person involved in the challenged decision. Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir.1998) ( "[R]emarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination.") (citing E.E.O.C. v. Alton Packaging Corp., 901 F.2d 920, 924 (11th Cir.1990)).

Lastly, in a direct evidence case, "production of nondiscriminatory reasons is not enough .

---

[8] Examples of direct evidence racial discrimination cases from the Eleventh Circuit follow: LaMothe v. Bal Harbour 101 Condo. Assoc., Inc., 316 F. App'x 844, 846 (11th Cir. 2008) ("statements that only a Haitian with brain cancer would write a note like that, and that [the plaintiff] should get a job at $6.50 at McDonald's like the other niggers" constitute direct evidence); E.E.O.C. v. Alton Packaging Corp., 901 F.2d 920, 923 (11th Cir. 1990) (holding that general manager's statement that "if it was his company, he wouldn't hire any black people" and production manager's statement that "you people can't do a [–] thing right" constitute direct evidence); Walters v. City of Atlanta, 803 F.2d 1135, 1141-42 (11th Cir. 1986) (holding that memorandum requesting a new list of candidates because "current register ... does not include any minority group representation" constitutes direct evidence); Wilson v. City of Aliceville, 779 F.2d 631, 633-36 (11th Cir. 1986) (holding that mayor's statement that "he wasn't gonna let no Federal government make him hire no god-dam nigger" constitutes direct evidence); Miles v. M.N.C. Corp., 750 F.2d 867, 874-75 (11th Cir. 1985) (holding that plant manager's statement that he wouldn't hire blacks because "half of them weren't worth a shit" constitutes direct evidence).

. . the defendant must prove that there was a [race]-neutral reason for its employment decision." Burns v. Gadsden State Comm. College, 908 F.2d 1512, 1518 (11th Cir. 1990); see Van Voorhis, 512 F.3d at 1300 ("In the face of direct evidence, an employer must prove that the same employment decision would have been made absent any discriminatory intent."); Carter, 870 F.2d at 582 (same).

With respect to circumstantial evidence, one way to show discriminatory intent is through the burden-shifting framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this framework, a plaintiff must make out a prima facie case of intentional discrimination, the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action, and the plaintiff then bears the burden to show that the proffered reason was pretextual. Wilson, 376 F.3d at 1087; Jackson v. State of Ala. State Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir. 2005).

To establish a prima facie case of employment discrimination under this framework, a plaintiff must show (1) she is a member of a protected group; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) employment or disciplinary policies were differently applied to her. Chapter 7 Tr. v. Gate Gourmet, Inc., 683 F.3d 1249, 1255 (11th Cir. 2012). That stated, "establishing the elements of the McDonnell Douglas framework is not, and never was intended to be, the sine qua non for a plaintiff to survive a summary judgment motion in an employment discrimination case." Smith v. Lockheed–Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011). For example, "a plaintiff may use 'non-comparison circumstantial evidence to raise a reasonable inference of intentional discrimination' and thereby create a triable issue." Chapter 7, 683 F.3d at 1255.

The Court concludes that Plaintiff has raised a genuine issue of material fact with respect to the discrimination claims in counts one, three and five. Under Plaintiff's version of the facts, which the Court must accept at the summary judgment stage, Ms. Steward terminated Plaintiff and contemporaneously referred to Plaintiff as a "stupid nigger." Such evidence, if believed by the trier of fact, constitutes direct evidence of discrimination. See Williamson v. Adventist Health System/Sunbelt, Inc., 372 F. App'x 936, 940 (11th Cir. 2010) ("To qualify as direct evidence of discrimination, we require that a biased statement . . be made concurrently with the adverse employment event, such that no inference is necessary to conclude that the bias necessarily motivated the decision."). The Court recognizes that Defendant disputes that Ms. Steward used this phrase or even that she terminated Plaintiff over the telephone, as opposed to in her office with a witness. Regardless, "[w]here the non-movant presents direct evidence that, if believed by the jury, would be sufficient to win at trial, summary judgment is not appropriate even where the movant presents conflicting evidence." Merritt v. Dillard Paper Co., 120 F.3d 1181, 1189 (11th Cir. 1997) (quoting Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir.1996)).

Plaintiff has also raised a genuine issue of material fact as to whether Ms. Steward was the decision maker with respect to the decision to terminate Plaintiff. Although Defendant claims that management in the Florida City office directed Ms. Steward to issue the final warning and terminate Plaintiff, the final warning is not signed by those officials. Instead, it is signed by Ms. Steward. Moreover, even if the Court were to accept that Ms. Steward was not the decision maker, the record evidence does provide a basis for a fact finder to conclude that Ms. Steward harbored a discriminatory animus against Plaintiff and used the Florida City officials as "cat's

9

paws" to unlawfully terminate Plaintiff's employment. Under the cat's paw theory, "causation may be established if the plaintiff shows that the decisionmaker followed the biased recommendation without independently investigating the complaint against the employee. In such a case, the recommender is using the decisionmaker as a mere conduit, or 'cat's paw' to give effect to the recommender's discriminatory animus." Stimpson v. City of Tuscaloosa, 186 F.3d 1328, 1332 (11th Cir. 1999).

Although Plaintiff withstands summary judgment on the direct evidence theory, the Court will address the circumstantial theory for the purposes of a complete record. Plaintiff has raised genuine issues of material fact under this theory as well.

With respect to the prima facie case, Defendant only challenges the third and fourth prongs. It is beyond dispute that termination of an employee is an adverse employment action.[9] Howard v. Walgreen Co., 605 F.3d 1239, 1244 (11th Cir. 2010); Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008). Next, Defendant argues that Plaintiff has failed to identify any comparator. However, as discussed supra, in lieu of comparator evidence, a plaintiff may provide adequate "non-comparison circumstantial evidence to raise a reasonable inference of intentional discrimination" Chapter 7, 683 F.3d at 1255. Plaintiff has done so by providing record evidence of Ms. Steward's racial slur upon her termination. In addition, Plaintiff's January 2014 suspension was not enacted until a year after the alleged disciplinary violation occurred, which is suspect as well. Furthermore, Plaintiff testified that the reasons she was unable to make her hours was because she was sent home early by her supervisors, a factor out of

---

[9] Oddly, Defendant does not address Plaintiff's termination and discusses only the final warning and the modification of Plaintiff's work schedule.

her control. Therefore, Plaintiff has met her prima face burden.

Assuming arguendo that Defendant has provided a legitimate non-discriminatory reason for Plaintiff's termination; i.e., that Plaintiff refused to work her assigned schedule, Plaintiff has provided adequate record evidence that this reason is pretextual. The alleged use of a racial epithet contemporaneous to Plaintiff's termination could lead a fact finder to conclude that Ms. Steward was motivated by discrimination rather than by Plaintiff's refusal to work the assigned schedule. See Wilson, 376 F.3d at 1091 (language showing discriminatory animus " may be significant evidence of pretext once a plaintiff has set out the prima facie case"); Jones v. Bessemer Carraway Med. Ctr., 151 F.3d 1321, 1323 n. 11 (11th Cir.1998) (same). "Far from being a stray remark, the comment may evince probative evidence of the state of mind of the decision-maker at the time of [the] termination." Damon v. Fleming Supermarkets of Florida, Inc., 196 F.3d 1354, 1362 (11th Cir. 1999). Taking the "substance, context and timing" of the comment, if believed, the Court finds it is significant evidence of pretext. Id. Finally, as highlighted supra, Plaintiff has pointed to additional evidence that a fact finder could consider as evidence of pretext, such as receiving discipline a year after the alleged conduct and being sent home early, which prevented Plaintiff from making her required hours.

For the foregoing reasons, the Court denies Defendant's summary judgment motion with respect to counts one, three and five. With respect to the remaining counts of retaliation, Defendant has failed to proffer any factual basis to justify granting summary judgment on these counts. Therefore, summary judgment on counts two, four and six is denied as well.

IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment (DE 27) is **DENIED**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 27th day of December, 2017.

_____
KENNETH A. MARRA
United States District Judge